The Chief Justice
delivered the opinion of the court.
This is a contest for land claimed under adverse rights. As the defendants in the court below hold the elder grants, it becomes necessary, in the first place, to enquire into the validity of the complainant’s title, which he asserts in vir? tuc of the following entry, to wit:
“1 January, 1783-Thomas Moseley enters 1650 acres “ on the waters of Miukston’s fork, adjoining William Benton on his south east corner, running north with his “east, line, then east and south for quantity.”
Wisliam Benton had, on the 28th of November, 1782, made an entry of 500 aeres, “lying on a branch of Hinks-“ton fork, beginning where James Estill was- kilted, anil *607 “running down a branch northwardly, then eastvvardiy, then “south for quantity.» *
, , We have no hesitation in saying that the place where Estill was killed is sufficiently established, both as it regards its identity and notoriety.
The battle with the Indians in which he fell, was attended with many circumstances eminently calculated to give it distinction, and to attract public attention, and the particular place where he was killed and afterwards buried. is not only expressly proven to have been known to many, but the fact of its being so known is inferrible from the circumstance of his having been the leader of a party of the whites engaged in the battle, and the numerous assemblage of men who convened at the battleground, from different stations, a few days after the battle, to bury the dead.
Benton’s entry, therefore, must be deemed valid, and the entry of Moseley dependant upon it, must, consequently, be considered as sufficiently established.
Benton’s entry ought, we think, to be surveyed as directed by the court below, by beginning at the place where Es-till was killed, as represented on the connected plat by the letter ‘B,’ and running thence north, thence east, thence south, and thence west to the beginning, so as to lay the 500 acres in a square. Á survey thus made, would he in strict compliance with the calls of the entry. It would be on a branch of Hinkston in part, and as the branch runs northwardly, the extension of the line north from the beginning would he down the branch. The survey would not, indeed, be bounded by the brand), but there is no call that it should bind on the branch, and to make it do so, as the place where Estill was killed is some poles east of the branch, would require a line to be extended from the beginning west, which would be doing violence to the call, to run from the place of beginning northwardly.
With respect to the mode of surveying Moseley’s entry, we do not concur with the circuit court That court decreed Moseley’s entry to be surveyed, by beginning at Benton’s south-east corner, when laid down as before directed, and running thence with Benton’s east line to his northeast corner, thence east, thence south, thence west, and thence north to the beginning, so as to form a square, containing the quantity of 1650 acres.
To make the survey in that mode, would he giving no effect to the call, “to adjoin Williahi Benton on his south *608 east corner.” But this being an express call, A construction that would render it thus inoperative, cannot be justified upon the score cither of reason or authority. To ascertain what should be the effect of this call, when conjoined with the other calls of the entry, may, perhaps, be facilitated by considering what would be its effect werc.it the only call in the entrv. In that cáse, there would be no.doubt that the entry should be made on the south east corner of Benton’s survey,'binding equally on his south and east, sides, and as the diagonal of Benton’s survey is not equal to the square of the quantity of Moseley’s entry, a line in the direction of the diagonal of Benton’s survey should be extended in equal distances from his north-east . arid southwest corners, so far as to make it equal to tile square of 1650 acres and from the extreme of that line, lines at right angles thereto, a south-east course, should be extended so far as to include the quantity. In the case supposed, however, the courses and extent of the lines of the survey would result as matter of construction only, and so far as the effect of a call depends upon construction, it is unquestionably liable to be controlled by other express calls in the entry. As far, therefore, as the other express calls in Moselev.’s entrv gives shape and figure to the survey, they must control the effect of the call to adjoin Benton on his south-east corner, but where they cease to operate, that call must, of necessity, have its effect, and as it is obvious that they can only give figure to the survey on its north and east boundaries, it results that the south or south-weátern boundaries must be formed according to the effect of the call to adjoin Benton’s south-eastern corner.
An entry calling to adjoin a previous one, “on the S E corner,” is to be surveyed by runmigaline From the N E to the S W corne*, & extending the line from each corner, to form the "bpse of a square, thence at right angles from the base thus formed A constructive figure of ¿survey must yield to positive calls in the entry; alj of which must have an effect
An entry calling to adjoin anot er on the S E corner (that other being a square with lines to t.; e cardinal points) thru N, then E, then S for quantity, is to he -*urve\ - edjoioingthe first entry of' tiie east side, sp.d from the NE that a line N w to the S w¡n include the quantity,
*608 The survey should, , therefore, be made binding on the south and east sides of Benton, running a line east from the north-east corner of Benton’s survey, as directed to be made for the north boundary, thence south, thence north 45 degrees west, to the termination of the diagonal line, extended, as before supposed, from the south-west corner of Benton’s survey, ami with that diagonal line to the corner. The quantity of acres will necessarily regulate the extent of the line forming the north boundary. To so much of the land in controversy as would be included in a survey of Moseley’s entrv when thus made, and as is included in the survey as actually made, the complainants would be entitled, if the defendants have not a prior equity.— This; however, they ailedge they have in virtue of several *609 entries of a date anterior to that under which the complainant claims. These entries are in the names of Thomas and David Jemison, and depend upon the entry of Enoch Smith’s settlement. That entry was, in the case of Smith against Harrow, 1 Bibb, 97, adjudged to be valid, and of the correctness of that decision we have no doubt, nor have we any difficulty in affirming, that the evidence in this case should produce the same result. The circuit court therefore correctly sustained this entry, and those of the de-feudants depending upon it; and we concur too with that court in the manner in which it has directed those surveys respectively to be made.
Hardin for appellant, Pope and Bledsoe for appellees.
We perceive, therefore, no error in the decree of the circuit court, except in relation to the .manner of directing the survey of Moseley’s entry to be made as herein before noticed. The decree of that court must, for that error, be reversed, the cause be remanded to that court, that it may enter up a decree in conformity to this opinion, and make such other orders and decrees as mav be agreeable to equity-
The appellant, Moseley, must pay the cost of both appeals.